Jason C. HELTON *v.* MBNA AMERICA BANK, N.A.

CA 07-759                                                  285 S.W.3d 676

Court of Appeals of Arkansas
Opinion delivered June 4, 2008

*Jim Pat Flowers,* for appellant.

*Law Office of Stephen P. Lamb,* by: *Mac Golden,* for appellee.

WENDELL L. GRIFFEN, Judge. In this debt-collection case, the Cross County Circuit Court granted MBNA America Bank's (MBNA) motion for summary judgment and confirmed a $16,670.43 arbitration award against Jason Helton. Helton appeals from the order, contending that there existed a genuine issue of material fact regarding whether he entered an agreement to arbitrate. He further asserts that the circuit court erred in finding that he was barred from raising the failure to agree to arbitrate as a defense. We hold that the circuit court erred in granting summary judgment in light of Helton's affidavit wherein he stated that he neither agreed to arbitrate the dispute nor participated in its subsequent arbitration. Accordingly, we reverse and remand.

### Facts

On May 17, 2004, an arbitrator awarded MBNA $16,670.43 in its dispute with Helton. MBNA filed a petition in circuit court to confirm the award on December 19, 2005. Helton responded by alleging, among other things, that there was no agreement to arbitrate between the parties. MBNA later filed a motion for summary judgment. In its motion, it included a copy of an amendment to the credit-card agreement that purported to bind Helton to arbitration. The relevant language of that amendment states:

As provided in your Credit Card Agreement and under Delaware law, we are amending the Credit Card Agreement to include an Arbitration Section. Please read it carefully because it will affect your right to go to court, including any right you may have to have a jury trial. Instead, you (and we) will have to arbitrate claims. You may choose not to be subject to this Arbitration Section by following the instructions at the end of this notice. This Arbitration Section will become effective on February 1, 2000. This Arbitration Section reads:

Arbitration: Any claim or dispute ("Claim") by either you or us against the other, or against the employees, agents or assigns of the other, arising from or relating in any way to this Agreement or any prior Agreement or your account (whether under a statute, in contract, tort, or otherwise and whether for money damages, penalties or declaratory or equitable relief), including Claims regarding the applicability of this Arbitration Section or the validity of the entire Agreement or any prior Agreement, shall be resolved by binding arbitration.

The arbitration shall be conducted by the National Arbitration Forum ("NAF"), under the Code of Procedure in effect at the time the claim is filed. . . . Any arbitration hearing at which you appear will take place within the federal judicial district that includes your billing address at the time the Claim is filed. This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"). Judgment upon any arbitration award may be entered in any court having jurisdiction. . . .

THE RESULT OF THIS ARBITRATION SECTION IS THAT, EXCEPT AS PROVIDED ABOVE, CLAIMS CANNOT BE LITIGATED IN COURT, INCLUDING SOME CLAIMS THAT COULD HAVE BEEN TRIED BEFORE A JURY, AS CLASS ACTIONS OR AS PRIVATE ATTORNEY GENERAL ACTIONS.

*If you do not wish your account to be subject to this Arbitration Section, you must write to us at MBNA America, P. O. Box 15565, Wilmington, DE 19850. Clearly print or type your name and credit card account number and state that you reject this Arbitration Section. You must give notice in writing; it is not sufficient to telephone us. Send this notice only to the address in this paragraph: do not send it with a payment.* **We must receive**

*your letter at the above address by January 25, 2000 or your rejection of the Arbitration Section will not be effective.*

(All emphasis in original.)[1] In response to MBNA's motion, Helton filed an affidavit stating that he disputed the validity of the debts and that he never signed anything agreeing to arbitrate any claim with MBNA. He specifically alleged, "If any arbitration proceeding actually took place, it did so without my participation and without my agreement or consent."

The court issued a letter opinion dated March 8, 2007, in which it found that the time for Helton to challenge the arbitration award had passed. In so finding, the circuit court relied on Ark. Code Ann. § 16-108-212(b) (Repl. 2006), which provides a ninety-day time limit for challenging an arbitration award under the Uniform Arbitration Act (UAA). The finding was incorporated into an order dated April 4, 2007, which granted MBNA's motion for summary judgment and confirmed the arbitration award.

### Analysis

The sole issue in this appeal is whether the circuit court properly granted MBNA's motion for summary judgment. Summary judgment should be granted only when it is clear that there are no genuine issues of material fact to be litigated and the moving party is entitled to judgment as a matter of law. *O'Marra v. Mackool,* 361 Ark. 32, 204 S.W.3d 49 (2005); *Riverdale Dev. Co. v. Ruffin Bldg. Sys. Inc.,* 356 Ark. 90, 146 S.W.3d 852 (2004). The burden of sustaining a motion for summary judgment is the responsibility of the moving party. *Pugh v. Griggs,* 327 Ark. 577, 940 S.W.2d 445 (1997). Once the moving party has established a prima facie entitlement to summary judgment, the nonmoving party must meet proof with proof and demonstrate the existence of a material issue of fact. *Id.* This court determines if summary judgment was appropriate based on whether the evidence presented by the moving party in support of its motion leaves a material fact unanswered, viewing the evidence in the light most favorable to the nonmoving party and resolving all doubts and inferences against the moving party. *George v. Jefferson Hosp. Ass'n, Inc.,* 337

---

[1] This is the same arbitration agreement that was at issue in the MBNA cases cited in this opinion.

Ark. 206, 987 S.W.2d 710 (1999); *Adams v. Arthur*, 333 Ark. 53, 969 S.W.2d 598 (1998). Review is not limited to the pleadings, but also focuses on the affidavits and other documents filed by the parties. *Hisaw v. State Farm Mut. Auto. Ins. Co.*, 353 Ark. 668, 122 S.W.3d 1 (2003); *Brown v. Wyatt*, 89 Ark. App. 306, 202 S.W.3d 505 (2005). After reviewing undisputed facts, summary judgment should be denied if, under the evidence, reasonable persons might reach different conclusions from those undisputed facts. *Allen v. Allison*, 356 Ark. 403, 155 S.W.3d 682 (2004).

As a preliminary matter, the circuit court erred in relying on the UAA to find that Helton was time barred from raising his defense. In *Danner v. MBNA America Bank, N.A.*, 369 Ark. 435, 255 S.W.3d 863 (2007), the Arkansas Supreme Court concluded that the Federal Arbitration Act (FAA), 9 U.S.C. § 1 et seq. (2000), governed in cases such as this, as the transaction involves interstate commerce. Under the FAA, a party has three months after an arbitration award has been delivered to make a motion to vacate, modify, or correct the award. *See* 9 U.S.C. § 12 (2000). This is not an issue, however, as MBNA concedes that the FAA governs this matter.

Helton argues that the circuit court erred in granting summary judgment and confirming the arbitration award, as there was a genuine issue of material fact regarding whether he entered into an agreement to arbitrate. He further contends that the circuit court erred in finding that the expiration of the three-month period to challenge an arbitration award barred him from arguing that he had not agreed to arbitrate.

Helton heavily relies on *Danner* in support of his argument for reversal. As in the instant case, *Danner* involved a situation where MBNA submitted a claim to arbitration and received an award. It sought to confirm the award in circuit court. However, the cardholder disputed the validity of the debt, denied entering an arbitration agreement, and stated that she never participated in the arbitration. The *Danner* court, relying on *MCI Telecommunications Corp. v. Exalon Industries, Inc.*, 138 F.3d 426 (1st Cir. 1998), held that the three-month period of time imposed by the FAA is not triggered unless there is a written agreement to arbitrate. Because the cardholder in that case alleged that no such agreement existed, the case was remanded for a determination of whether a written agreement to arbitrate existed between the parties. *See also MBNA Am. Bank, N.A. v. Blanks*, 100 Ark. App. 8, 262 S.W.3d 218 (2007).

In response, MBNA relies on *MBNA America Bank, N.A. v. Gilbert*, 100 Ark. App. 221, 266 S.W.3d 229 (2007). There, the cardholder also alleged that he never entered into an arbitration agreement. Unlike in *Danner*, however, the cardholder participated in arbitration. We stated that *Danner* was distinguishable in that aspect, held that the arbitration award there was valid due to the cardholder's failure to challenge it within the statutory period, and ordered the circuit court to confirm the arbitration award.

■ In arguing that *Gilbert* is controlling, MBNA relies on paragraph six of the arbitration award, which states, "The Parties have had the opportunity to present all evidence and information to the Arbitrator." Reliance on this paragraph is flawed for two reasons. First, the paragraph only states that both parties were *given the opportunity* to present evidence. It does not state that both parties in fact did so. Second, this appeal is before us for review of a summary judgment. In contesting summary judgment, Helton presented an affidavit stating that he did not owe any money, that he did not agree to arbitration of the claim, and that he did not participate in arbitration. This raises an issue of material fact regarding whether Helton (1) agreed to arbitrate and (2) participated in arbitration. *Danner* controls under the facts of this case.

While the dissenting judges would overrule *Gilbert*, such action is not necessary or appropriate in this instance. Arkansas courts do not lightly overrule cases and apply a strong presumption in favor of the validity of prior decisions. *See, e.g., State v. Singleton*, 340 Ark. 710, 13 S.W.3d 584 (2000). As a matter of public policy, it is necessary to uphold prior decisions unless a great injury or injustice would result. *Sanders v. County of Sebastian*, 324 Ark. 433, 922 S.W.2d 334 (1996). Adherence to precedent promotes stability, predictability, and respect for judicial authority. *Id.* (citing *Hilton v. S.C. Pub. Rys. Comm'n*, 502 U.S. 197 (1991)).

The instant case does not present the opportunity to overrule *Gilbert*, as the issue of whether Helton participated in the arbitration proceedings remains in dispute. Further, Helton does not ask this court to reconsider the validity of the *Gilbert* holding. Finally, for the reasons previously stated, we can reverse and remand without overruling our precedent.

Because there is a genuine issue regarding whether Helton agreed to arbitrate and whether he participated in arbitration, summary judgment was improper. Accordingly, we reverse the grant of summary judgment and remand for further proceedings.

Reversed and remanded.

GLADWIN, J., agrees.

GLOVER and VAUGHT, JJ., concur.

PITTMAN, C.J., and BIRD, J., concur in part, dissent in part.

L ARRY D. VAUGHT, Judge, concurring. I join in Judge Griffen's majority opinion but write separately to affirm my belief that *MBNA America Bank, N.A. v. Gilbert*, 100 Ark. App. 221, 266 S.W.3d 229 (2007), remains good law and is easily distinguishable from both this case and *Danner v. MBNA American Bank*, 369 Ark. 435, 255 S.W.3d 863 (2007).

All of these cases are decided under the Federal Arbitration Act, 9 U.S.C. §§ 1–16 ("FAA"), not state law. In neither the case at bar nor *Danner* did the cardholders admit that they participated in the arbitration proceedings in any form. To the contrary, as we pointed out in *Gilbert*, the distinguishing characteristic of that case was that Gilbert admitted that he participated in the arbitration proceedings — albeit protesting all along the existence of an arbitration agreement. He admitted that he filed a written response to the arbitrator, that he received notice of the arbitration award, and that he objected to the award by letter to MBNA. However, Gilbert did not petition the court to set aside the award within ninety days as required by the FAA. 9 U.S.C. § 12 (2000). Because he participated in the arbitration, he waived any defenses he might have had by not following the time requirements set forth in the FAA. *See MCI Telecomm. Corp. v. Exalon Indus., Inc.*, 138 F.3d 426, 430–31 (1st Cir. 1998).

I am authorized to state that Judge Glover joins this opinion.

S AM BIRD, Judge, concurring in part, dissenting in part. The majority reverses and remands this case for a determination by the circuit court of, first, whether Helton participated in the arbitration proceeding and, second, whether he agreed to arbitrate. I agree with the majority that the trial court erred in granting summary judgment in this case because there is a genuine issue of fact regarding whether Helton entered into an agreement with MBNA to arbitrate disputes. *See Danner v. MBNA Am. Bank, N.A.*, 369 Ark. 435, 255 S.W.3d 863 (2007). Thus, I join the majority in reversing and remanding this matter for a determination by the circuit court of whether the parties had an agreement to arbitrate. However, I dissent,

in part, because I do not agree with the majority that Helton's participation in the arbitration proceeding (if he did participate) precludes the circuit court's review of the question of arbitrability. Thus, whether Helton participated in the arbitration proceeding is not an issue that I would direct the circuit court to address upon remand. Because *MBNA America Bank, N.A. v. Gilbert*, 100 Ark. App. 221, 266 S.W.3d 229 (2007), holds that participation in an arbitration proceeding, in any form, precludes a circuit court's review of the question of arbitrability if a timely motion to vacate, modify, or correct the award is not made pursuant to 9 U.S.C. § 12, I would overrule *Gilbert*.

The majority suggests that this case does not present the opportunity to overrule *Gilbert* because the issue of whether Helton participated in the arbitration proceedings remains in dispute and because Helton has not asked this court to consider the validity of the *Gilbert* holding. I strongly disagree. Helton's request that this court reverse the circuit court's ruling under *Danner* because there is a genuine issue of material fact regarding whether the parties entered into an agreement to arbitrate necessarily requires overruling *Gilbert*. *Gilbert* modified *Danner* by precluding review of arbitrability if the adverse party "participated" in the arbitration. Thus, under *Gilbert*, we cannot reverse this case pursuant to *Danner* without a determination of whether Helton participated. The *Gilbert* court did not determine to what extent Gilbert participated but, after reviewing the arbitration award stating that Gilbert "filed a response with the Forum and served it on the Claimant" and "Parties have had the opportunity to present all evidence and information to the Arbitrator" — both of which findings also appear in Helton's arbitration award — the court reasoned that "[w]hile Gilbert's response is not in the record, it is apparent that he did participate in the arbitration, at least to the extent that he was on notice of the proceeding." *Gilbert*, 100 Ark. App. at 225–26, 266 S.W.3d at 232. Likewise, in this case, Helton's own affidavit suggests that he was on notice of the arbitration proceeding. In my view, the reasoning in *Danner* does not allow for the "participation" exception created by *Gilbert*; participation in the arbitration does not preclude a circuit court's review of arbitrability; and thus *Gilbert*'s holding to the contrary must be overruled.

Arbitration is a matter of contract between the parties; there is no general legal duty to arbitrate private contractual disputes. On this premise, the United States Supreme Court held that the

question of whether a party has agreed to arbitrate is subject to independent review by the courts. *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995) (reasoning that "[a]rbitration is simply a matter of contract between the parties; it is a way to resolve those disputes — but only those disputes — that the parties have agreed to submit to arbitration"). The Federal Arbitration Act merely provides a forum in which private disputes may be resolved where the parties have agreed to use such a forum. *See MCI Telecomms. Corp*, 138 F.3d at 429. However, these FAA provisions "do not come into play unless there is a written agreement to arbitrate. . . . If there is no such agreement, the actions of the arbitrator have no legal validity." *Danner*, 369 Ark. at 441, 255 S.W.3d at 868 (quoting *MCI Telecomms. Corp*, 138 F.3d at 430).

*Danner*, continuing to quote *MCI*, explained the effect of an adverse ruling by the circuit court on the issue of arbitrability on a party who had not participated in the arbitration: "Of course, if a court *later* determines that an arbitration agreement was in effect, and that the non-appearing party was bound by its conditions, the FAA would then fully come into operation, including the time limitations of section 12." *Id.* (emphasis added). Thus, if on remand the circuit court in *Danner* determined that there was an agreement to arbitrate, Danner would be bound by the time limits imposed by 9 U.S.C. § 12 and unable to appeal the merits in spite of her failure to participate in the arbitration proceeding. Likewise, a party who participated in litigation of the merits at the arbitration proceeding would also be bound by the procedural requirements of the FAA *if a circuit court later determined that there was an agreement to arbitrate.* However, in my view, this does not bar either party — that is, one who did not participate in the arbitration proceeding or one who did participate in the arbitration proceeding — from having independent review of the question of arbitrability in the circuit court. The actions of the arbitrator in the arbitration proceeding, including its award, have no legal validity "unless there is a written agreement to arbitrate." *Id.* at 441, 255 S.W.3d at 868.

While *Danner* did not file a response or otherwise participate in the arbitration proceeding and this non-participation was mentioned in *Danner* and in *Danner*'s quotation from *MCI*, neither the court's reasoning nor its holding depended upon Danner's non-participation: "We agree with the *MCI* court's conclusion that the time limit imposed by 9 U.S.C. § 12 is not triggered *unless there is*

*a written agreement to arbitrate."* *Id.* at 441, 255 S.W.3d at 868 (emphasis added). The Supreme Court has held that the question of arbitrability is subject to independent review by the courts. *See First Options*, 514 U.S. at 947. Accordingly, I would overrule *Gilbert* to the extent it holds that the time limits of 9 U.S.C. § 12 are triggered, regardless of whether there is a written agreement to arbitrate, if a party "participated" in the arbitration proceeding.

I am authorized to state that Chief Judge Pittman joins in this opinion.